IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| Donald A. Bealer, individually and d/b/a Bealer Consulting, and Marianne C. Bealer, | : : : | |
| Plaintiffs. | : | Civil Action |
| v. | : | No. 04-5915 |
| | : | |
| The Mutual Fire, Marine and Inland Ins. Co., et al., | : : | |
| Defendants. | : : : : | |

**Memorandum and Order**

Yohn, J.                                                      August ____, 2005

Presently before the court is defendants' motion to dismiss plaintiffs' Amended

Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon

which relief can be granted. Upon consideration of defendants' motion and plaintiffs' brief in

opposition thereto, I will grant the motion in part and deny it in part, for the reasons stated herein.

**I. Factual Background and Procedural History**

*Pro se* plaintiff Donald A. Bealer ("Bealer") is an actuary whose business, Bealer

Consulting, was engaged at various times from 1997 until 2003 to provide actuarial services for

defendants. *See* Amended Complaint at ¶ 6. Plaintiff Marianne C. Bealer is Donald Bealer's

spouse and the administrative assistant for Bealer Consulting. *See id.* at ¶ 7. Plaintiffs are citizens

of New Jersey. *See id.* at ¶¶ 6-7. Defendants Mutual Fire, Marine and Inland Insurance Company

("Mutual Fire"), Franklin Homeowners Assurance Company ("FHA"), and FHA Holding

Company are Pennsylvania corporations with their principal places of business in Pennsylvania.

*See id.* at ¶ 6. Defendants Mike Petrelia and Frank McCall are corporate officers of Mutual Fire.

1

*See id.* at ¶¶ 12-13.

The following account of events is derived from plaintiffs' Amended Complaint. Bealer's business relationship with Mutual Fire, FHA, and FHA Holding Company began with an informal, oral agreement as to hours and rates for consulting work. *See* Amended Complaint at ¶ 23. This informal agreement was later memorialized in a written consulting agreement, which was executed on February 25, 1997. *See id.* at Exhibits 3(c)-3(m). The terms of the written agreement, which was drafted by defendants, were more restrictive than the terms of the oral agreement, and less advantageous to plaintiff—for example, with respect to allowed billables. *See id.* at ¶ 23. This was an initial point of contention between the parties, but Bealer signed the agreement nevertheless and began work for Mutual Fire and FHA. *See id.*

The written agreement, which expired in June of 1997, was renewed by addendum for a term to begin on December 1, 1997 and end on December 31, 1997. *See id.* at Exhibits 4(a)-4(b). After the renewal expired, Bealer performed additional work for defendants over the course of several years, pursuant to the terms of project-specific engagement letters, which outlined the scope of work, the rate of compensation, and the number of hours estimated to complete the work. *See id.* at Exhibit 5a (letter dated September 9, 1998); Exhibit 7(f) (letter dated October 27, 2000); Exhibit 7(g) (letter dated November 10, 1999); Exhibit 8(a) (letter dated December 21, 2002); Exhibit 9(b) (letter dated July 10, 2003).

At various points during plaintiff's business relationship with defendants, disputes arose over hours billed, payments due, and the contents of reports. *See* Amended Complaint at ¶¶ 23-32. There were disagreements over whether Bealer had met his contractual obligations and whether defendants had met theirs. *See id.* Defendants delayed payment for reports, pending the

completion of revisions that plaintiff believed to be unreasonable, inaccurate, and wasteful of his time and energy. *See id.* Some invoices were not paid in full. *See id.* Bealer threatened to delay or withhold reports, pending payment for past work. *See id.* He spent considerable time trying to resolve these disputes, causing him to neglect work for other clients. *See id.* He experienced stress and stress-related health problems that he attributes to the protracted conflicts he had with defendants. *See id.*

Over time, the relationship between Bealer and defendants deteriorated irretrievably, resulting in plaintiffs' filing a *pro se* complaint in the Philadelphia Court of Common Pleas in August 2004. Defendants filed preliminary objections, which were sustained, and the complaint was dismissed on November 30, 2004 for failure to state a claim upon which relief can be granted, but without prejudice to plaintiffs' right to file an Amended Complaint pleading cognizable causes of action within twenty days of the date of the order. In lieu of filing an Amended Complaint in the Court of Common Pleas, plaintiffs filed suit in this court on December 20, 2004, basing subject matter jurisdiction on diversity of citizenship.[1] They filed an Amended Complaint on April 18, 2005. The Amended Complaint brings nine counts: (1) breach of contract, (2) negligence, (3) slander, (4) libel, (5) negligent misrepresentation, (6) intentional interference with contractual relations, (7) fraud, (8) intentional infliction of emotional distress, and (9) civil RICO. Defendants filed the instant motion to dismiss on May 6, 2005, and the issues have been briefed by both sides.

---

[1]It is not clear from the face of the Amended Complaint whether the parties are completely diverse for purposes of 28 U.S.C. § 1332; the Amended Complaint is silent as to the citizenship of the individual defendants. In the absence of any assertion to the contrary by defendants, the court assumes that complete diversity exists.

## II. Discussion

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In evaluating a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989) (citing *Wisniewski v. Johns-Manville Corporation*, 759 F.2d 271, 273 (3d Cir. 1985)). The court may dismiss a complaint, "only if it is certain that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swin Resource Systems, Inc. v. Lycoming County, Pennsylvania, acting through the Lycoming Company Solid Waste Department*, 883 F.2d 245, 247 (3d Cir. 1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). "A *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (quoting from *Haines v. Kerner*, 404 U.S. 519 (1972)).

### A. Counts One, Five, Six, and Eight

Defendants argue that the dismissal of plaintiffs' complaint in the Philadelphia Court of Common Pleas has a preclusive effect on several of the issues raised in this litigation. Specifically, they argue that Counts One (breach of contract), Five (negligent misrepresentation), Six (intentional interference with contractual relations), and Eight (intentional infliction of emotional distress) of the Amended Complaint are barred by the doctrine of collateral estoppel.

4

Plaintiffs counter that collateral estoppel does not apply to any of the issues in this case, because the issues were not adjudicated on the merits in the prior state court action.

The doctrine of collateral estoppel, often referred to as issue preclusion, prevents an issue of law or fact from being relitigated after it has once been litigated and finally adjudicated in a court of competent jurisdiction. *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993). When a prior case has been adjudicated in a state court, federal courts are required by 28 U.S.C. § 1738 to give full faith and credit to the state judgment. *Id.* Under Pennsylvania law, the doctrine of collateral estoppel applies where the following four elements are satisfied: (1) an issue decided in a prior action is identical to one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *Jones v. United Parcel Service*, 214 F.3d 402, 405 (3d Cir. 2000) (citing *Rue v. K-Mart Corp.*, 713 A.2d 82 (Pa. 1998)).

In this case, the first element of defendants' collateral estoppel defense is not satisfied, inasmuch as the underlying complaint filed in state court bears little if any resemblance to the Amended Complaint in this case. The original complaint was a litany of loosely connected facts and grievances that altogether failed to state legally cognizable causes of action, whereas the Amended Complaint reflects plaintiffs' increasing familiarity with the formalities of pleading and alleges specific counts that correspond to cognizable legal claims. Given the extreme dissimilarities between the two pleadings, the argument that they raise "identical" issues for

5

purposes of collateral estoppel is less than convincing.[2]

Because the Amended Complaint in this case does not raise issues identical to those raised previously in state court, plaintiffs' previous filing in state court can have no preclusive effect on any of the issues raised in this case. Defendants' motion to dismiss Counts One, Five, Six, and Eight on the basis of issue preclusion must therefore be denied.

---

[2]Although I need not go beyond the first element of the collateral estoppel defense to decide that plaintiffs' claims are not barred, it is questionable whether the state court's order dismissing plaintiffs' claims with leave to amend the complaint constituted a final judgment on the merits. Defendants argue that the order automatically became a final judgment on the merits when plaintiffs failed to file an amended complaint in state court within the prescribed period, but they do not cite any legal authority to support their argument.

In a case where an amended complaint is not timely filed following the entry of an order sustaining preliminary objections and granting leave to amend, the defendant may move the court for a judgment of non pros against the plaintiff. *Chamberlain v. Altoona Hospital*, 567 A.2d 1067, 1069-1070 (Pa. Super. Ct. 1989). The state court docket in this case, which contains no entry after the November 30 order of dismissal, indicates that defendants did not so move. *See* Defendants' Memorandum of Law, Exhibit E. According to the docket entries, no judgment was ever entered in the case. *See id.* This court could find no authority to support defendants' proposition that a plaintiff's failure to file a timely amended complaint, without more (*i.e.*, without a motion for judgment by the defendant), converts a court's order sustaining preliminary objections but granting leave to amend into a final judgment on the merits.

Even if defendants *had* moved for a judgment of non pros, however, and such a judgment had been entered in their favor, it would not be considered a judgment on the merits, although it would be appealable. *See Gordon-Stuart Ltd. v. Allen Shops, Inc.*, 361 A.2d 770, 772 (Pa. Super. 1976) (holding that "where the plaintiff is non prossed for…failing to file an amended pleading, the judgment for the defendant is not on the merits and does not preclude the plaintiff from commencing another suit on the same cause of action"). Given that there was simply no judgment entered in plaintiffs' underlying state action, non pros or otherwise, it seems doubtful that a Pennsylvania court would consider Judge New's order of November 30 a final judgment on the merits for purposes of collateral estoppel.

There is also some question as to whether plaintiffs, who are acting *pro se*, might be excused for failing to file an amended complaint in state court, given that they did file a complaint in this court prior to the expiration of the twenty days Judge New gave them to amend. Plaintiffs, who understandably lack a firm grasp of procedural rules, are under the impression that, by filing in this court instead of returning to the Court of Common Pleas, they effected a "transfer" of the case into federal court. *See* Plaintiffs' Response to Motion to Dismiss Amended Complaint at 2. This impression is, of course, mistaken; it does, however, explain plaintiffs apparent lack of diligence with respect to the amendment of their pleading in state court.

**B. Counts Two, Five, and Seven**

Defendants argue that Counts Two (negligence), Five (negligent misrepresentation), and Seven (fraud) of the Amended Complaint must be dismissed pursuant to the "gist of the action" doctrine, because they are derivative of plaintiffs' breach of contract claim. The gist of the action doctrine is applied to maintain the conceptual distinction between the theories of breach of contract and tort by preventing a plaintiff from recasting ordinary breach of contract claims as tort claims. *Bash v. Bell Tel. Co. of Pennsylvania*, 601 A.2d 825, 829 (Pa. Super. Ct. 1992). Although the Pennsylvania Supreme Court has not yet adopted the gist of the action doctrine, both the Pennsylvania Superior Court and a number of United States District Courts have predicted that it will. *See Asbury Auto. Group L.L.C. v. Chrysler Ins. Co.*, No. 01-3319, 2002 U.S. Dist. 117, at *9 n.3 (E.D. Pa. Jan.7, 2002); *Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 833 n.11 (E.D. Pa. 2000); *Sullivan v. Chartwell Investment Partners, L.P.*, No. 3592 EDA 2003, 2005 Pa. Super. LEXIS 733, at *18 (Pa. Super. Ct. Apr. 5, 2005); *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002); *Bash*, 601 A.2d 825.[3]

When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort. *Sunquest Info. Sys. v. Dean Witter Reynolds*, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999). To determine whether the gist of the claim sounds in

---

[3]In addition, the Third Circuit has upheld a summary judgment for the defendants in a products liability case involving overlapping claims of fraudulent concealment and breach of warranty, citing Pennsylvania courts' "lack of hospitality to tort liability for purely economic loss." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 (3d Cir. 2002).

contract or in tort, the court must determine the source of the duties allegedly breached. *Werner Kammann Maschinenfabrik v. Max Levy Autograph, Inc.*, No. 01-1083, 2002 U.S. Dist. LEXIS 1460, at *19 (E.D. Pa. Jan. 31, 2002). If the duties flow from an agreement between the parties, the claim is deemed to be contractual. *Id.* Conversely, if the duties breached were of a type imposed on society as a matter of social policy, the claim is deemed to sound in tort. *Id.* at *19-20. In other words, if the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort. *See Sunquest*, 40 F. Supp. 2d at 651 (holding that a tort claim is maintainable only if the contract is 'collateral' to conduct that is primarily tortious).

The duties asserted by plaintiffs here–duties involving payment in exchange for professional services–are inextricably intertwined with the terms of the consulting agreement between Bealer and the corporate defendants. Plaintiffs' claims of negligence, negligent misrepresentation, and fraud spring from allegations that Bealer ultimately got less, and defendants got more, than the parties initially bargained for. The breaches of duty alleged are thus breaches of *contractual* duties, including the implicit duty of good faith and fair dealing.

In a case such as this, the gist of the action doctrine bars the asserted tort claims because the gravamen of the claims is in contract. *See Werner*, 2002 U.S. Dist. LEXIS at *21 (holding that the gist of the action doctrine barred a fraud claim against a manufacturer that made express representations, which were unfulfilled upon delivery, that certain heating elements would be enclosed in a furnace); *Caudill*, 123 F. Supp. 2d at 833-834 (applying the gist of the action doctrine to bar a fraud claim against a software company that provided software that never worked as promised); *Horizon Unlimited, Inc. v. Silva*, 1998 U.S. Dist. LEXIS 2223 (E.D. Pa.)

(dismissing, pursuant to the gist of the action doctrine, a negligent misrepresentation claim premised on allegedly false statements made in promotional literature); *Factory Mkt. v. Schuller Int'l.*, 987 F. Supp. 387, 394-395 (E.D. Pa. 1997) (applying the gist of the action doctrine to bar fraud and negligence claims against a roofer who agreed to repair a chronically leaking roof and repeatedly attempted to repair it, even though he knew from the outset that it was beyond repair).

Because plaintiffs have mischaracterized contract claims as tort claims, and because Pennsylvania courts have adopted the gist of the action doctrine to bar recovery in tort when claims are so mischaracterized, plaintiffs' negligence, negligent misrepresentation, and fraud claims must be dismissed for failure to state a claim upon which relief can be granted. Counts Two, Five, and Seven of the Amended Complaint are therefore dismissed with prejudice.

### C. Counts Three and Four

In Count Three of the Amended Complaint, plaintiffs claim that Bealer was slandered when defendants' agents made it known to Bealer's current and potential clients that he was "adamant" about not altering the contents of his actuarial reports. Bealer alleges that defendants wanted him to write and revise reports to make it appear that their financial position was better than it really was. He resisted making or refused to make requested revisions when he considered defendants' requests to be unreasonable or unethical, prompting defendants' statement that he was adamant. Because of defendants' statement, plaintiffs allege, Bealer's reputation as an actuary has been harmed. Defendants argue that plaintiffs' slander claim should be dismissed because "adamant" is not capable of defamatory meaning or, alternatively, because defendants' statement was no more than a subjective interpretation of Bealer's attitude.

A communication is defamatory if it tends to deter third persons from associating with the

9

subject of the communication or to harm the subject's reputation by lowering him in the estimation of the community. *Birl v. Philadelphia Elec. Co.*, 167 A.2d 472, 475 (Pa. 1960). To survive a motion to dismiss a claim of slander, a plaintiff is required to allege (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) an understanding by the reader or listener of its defamatory meaning; and (5) an understanding by the reader or listener of an intent by the defendant that the statement refer to the plaintiff. *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 923 (3d Cir. 1990) (citing 42 Pa. Cons. Stat. § 8343(a)(1)-(5) (1988)).

It is for the court to determine, in the first instance, whether the statement of which the plaintiff complains is capable of a defamatory meaning; if the court decides that it is capable of a defamatory meaning, then it is for the jury to decide if the statement was so understood by the reader or listener. *Id.* (citing *Corabi v. Curtis Publishing Co.*, 273 A.2d 899 (Pa. 1971)). To ascertain the meaning of an allegedly defamatory statement, the court must examine the statement in context. *Id.* (citing *Baker v. Lafayette College*, 532 A.2d 399 (Pa. 1987)). Expressions of opinion are not actionable unless they imply undisclosed false and defamatory facts. *Id.* (again citing *Baker*).

In support of their argument that defendants' statement is not defamatory, defendants cite *Parano v. O'Connor*, 641 A.2d 607, 609 (Pa. Super. Ct. 1994), which held that it was not defamatory as a matter of law for an executive at a healthcare company to tell a newspaper reporter that the administrator of a hospital the company was seeking to acquire had been "adversarial," "uncooperative," and "less than helpful" in business negotiations. Such statements, the court held, while they may have been annoying or embarrassing to the hospital administrator,

were not sufficiently injurious to support a defamation claim. *Id.* In addition to concluding that the statements were not defamatory, the court in *Parano* held that the statements were non-actionable because they were merely an expression of the healthcare executive's opinion and did not imply undisclosed false facts. *Id.*

Defendants' reliance on *Parano* is well-placed, as it is similar to this case in terms of both the nature of the allegedly defamatory statements and the business context in which the allegedly defamatory statements were made. Taken in context, defendants' statement that Bealer had become adamant about not altering the contents of his reports is not capable of defamatory meaning. On the contrary, if, as Bealer alleges, he refused to alter his reports because it would have been manifestly unethical or even illegal for him to do so, a public statement that he acted adamantly in defense of his professional ethics would ostensibly redound to his honor rather than his discredit in the business community.[4] An actionable statement is one that falsely imputes to an individual a want of integrity in the conduct of his business. *Cosgrove Studio & Camera Shop, Inc. v. Pane*, 182 A.2d 751, 754 (Pa. 1962). The statement allegedly made by defendants implies that Bealer possesses, rather than lacks, professional integrity. Moreover, even if the statement that Bealer had become adamant could be construed to be embarrassing or annoying, it is not sufficiently injurious to sustain a claim for defamation. *See Scott-Taylor, Inc. v. Stokes*, 229 A.2d 733 (Pa. 1967) (holding that "[i]t is not enough that the victim of the 'slings and arrows of outrageous fortune' be embarrassed or annoyed, he must have suffered that kind of harm which has grievously fractured his standing in the community of respectable society); *Parano*, 641 A.2d

---

[4]It seems that this would be particularly true in light of the strong public outcry against the manipulative and dishonest accounting practices that led to the national corporate scandals to which plaintiffs allude in their pleadings.

at 609.

Defendants' statement is non-actionable not only because it is incapable of defamatory meaning, but also because it is a statement of opinion that does not imply any undisclosed false facts. *See Parano*, 641 A.2d at 609; *Beckman v. Dunn*, 419 A.2d 583, 587 (Pa. Super. Ct. 1980). The statement discloses nothing more than defendants' subjective interpretation of Bealer's conduct with respect to his willingness to revise reports. It cannot be understood to imply undisclosed false facts, because it implies only what Bealer himself freely admits: that he resisted making or declined to make some changes to his reports despite being pressed by defendants to do so. Because the statements plaintiffs allege to be slanderous are non-actionable, plaintiffs' slander claim (Count Three) must be dismissed with prejudice.

Count Four of the Amended Complaint is a claim for libel. Plaintiffs allege that defendants distributed Bealer's reports and opinions during September 2003 without his consent, and that the distribution of the reports was defamatory and caused harm to Bealer's professional reputation. Defendants argue that plaintiffs' libel claim must fail because the reports defendants allegedly distributed were not defamatory as a matter of law, in that they did not contain any representation by defendants of any fact about plaintiffs.

A communication is defamatory if it "ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession." *Baker v. Lafayette College*, 504 A.2d 247, 251 (Pa. Super. Ct. 1986), *aff'd*, 532 A.2d 399 (Pa. 1987). The actuarial reports and opinions at issue in this case were prepared by Bealer and were presumably publicly attributed to him by defendants; however, the reports are not alleged to contain any references to Bealer, nor are they alleged to ascribe to him personally

12

any conduct, character, or condition that would cast doubt on his professional fitness. As a matter of law, the reports themselves are not communications capable of defamatory meaning. If defendants agreed, as plaintiffs allege, not to publish Bealer's reports without his prior written consent, and they failed to seek such consent before publishing them, Bealer may state a claim for breach of contract, but he does not state a claim for libel.

In addition to their claim relating to the distribution of Bealer's reports, plaintiffs allege that defendants Petralia and McCall "have also reduced erroneous and defamatory comments to writing that may have been distributed to other parties." This allegation, which asserts only the possibility of distribution to third parties, is wholly speculative as to the required element of publication. *See U.S. Healthcare, Inc.*, 898 F.2d at 923 (counting publication among the required elements of a defamation claim); *Daya v. Rathur*, No. 90-71659, 1990 U.S. Dist. LEXIS 19569, at *12 (S.D. Mich. Nov. 21, 1990) (holding that plaintiff must allege, with factual specificity, the actual publication of the allegedly defamatory words). As such, it cannot withstand defendants' motion to dismiss. Because a plaintiff pleading libel must allege, *inter alia*, the existence of a defamatory communication and the actual publication of such a communication to a third party, and because plaintiffs in this case do not allege facts establishing these required elements, their libel claim must fail. Count Four of the Amended Complaint is therefore dismissed with prejudice.

### D. Count Six

Count Six of the Amended Complaint is a claim for intentional interference with a contract, a cause of action that has long been recognized in Pennsylvania. *See Total Care Systems, Inc. v. Coons*, 860 F. Supp. 236, 241 (E.D. Pa. 1994). To state a claim of intentional

interference, a plaintiff must plead facts sufficient to establish (1) the existence of a contractual relationship between the plaintiff and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification for the interference; and (4) damages. *See Crivelli v. General Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000) (citing *Strickland v. University of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997)).

Defendants argue that plaintiffs' claim should be dismissed because plaintiffs have failed to plead facts sufficient to support a reasonable inference that defendants intended to interfere in Bealer's contractual relationships with other clients.[5] Plaintiffs counter that they have met their burden of alleging intent. With respect to the element of intent, plaintiffs have alleged that defendants harmed Bealer's relationships with other clients by burdening him continually with billing disputes and requests for revisions to his reports. Plaintiffs claim that defendants intended their demands to prevent Bealer from meeting other business obligations. Whether plaintiffs can actually prove that defendants' conduct was intended to cause interference with Bealer's other business relationships is a question for another day. At this stage, the allegations are sufficient to survive a motion to dismiss. Accordingly, defendants' motion to dismiss plaintiffs' intentional interference claim (Count Six) is denied.

### E. Count Eight

Count Eight of plaintiffs' amended complaint is for intentional infliction of emotional distress, a cause of action that has never actually been expressly recognized by the Supreme

---

[5]Defendants do not argue that plaintiffs have failed to establish the other required elements of their claim.

Court of Pennsylvania. *See Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000);

*Johnson v. Caparelli*, 625 A.2d 668, 671 (Pa. Super. Ct. 1993) (stating that there is "confusion

and conflict in the law" as to whether a plaintiff may state a claim for intentional infliction of

emotional distress in Pennsylvania). The Third Circuit Court of Appeals has predicted, however,

that the Pennsylvania Supreme Court will ultimately recognize this tort. *Pavlik v. Lane*

*Limited/Tobacco Exporters Int'l*, 135 F.3d 876, 890 (3d Cir. 1998). And the Pennsylvania

Supreme Court has cited § 46 of the Restatement (Second) of Torts as setting forth the minimum

requirements to sustain a claim were such a claim to be held cognizable in Pennsylvania. *See*

*Taylor*, 754 A.2d at 652. The Restatement defines the tort as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes
>
> severe emotional distress to another is subject to liability for such emotional
>
> distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (Second) of Torts §46(1) (1965).

With regard to the element of outrageousness, it is for the court to determine as a

threshold matter whether the defendant's conduct may reasonably be regarded as so extreme and

outrageous as to permit recovery. *Johnson*, 625 A.2d at 671. Extreme and outrageous conduct is

conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized

community. *Id.* at 672 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Defendants argue persuasively that the conduct alleged by plaintiffs, while it may

demonstrate that defendants were "difficult" or overbearing clients, would not demonstrate to

any reasonable fact-finder that defendants acted beyond all bounds of human decency. Although

15

the court does not doubt that Bealer is sincere in his belief that defendants' conduct towards him was shocking and outrageous, that conduct, viewed dispassionately, is not of the extremity that the law requires. Indeed, if defendants' conduct were really as personally and professionally debilitating to Bealer as he claims, it is difficult for the court to understand why Bealer chose to continue working with defendants for a period of several years beyond the expiration of his original contract.[6] Even if it were clear that a claim for intentional infliction of emotional distress is cognizable in Pennsylvania courts, plaintiffs' allegations are not sufficient to state such a claim. Count Eight of the Amended Complaint must therefore be dismissed with prejudice.

### F. Count Nine

Count Nine of the amended complaint is a civil RICO claim. Plaintiffs' assert two claims under RICO. The first is that defendants McCall and Petrelia engaged in a conspiracy to steal Bealer's services using the U.S. Mail. The second is that McCall and Petrelia engaged in a conspiracy, using the U.S. Mail, to defraud insurance regulators and policy holders by pressuring Bealer into preparing actuarial reports and opinions based on false and misleading information. Bealer alleges that he has been exposed to civil and criminal liability as a result of having been instrumentalized in furtherance of defendants' fraudulent scheme. He also alleges that he has suffered a great deal of stress as a result of defendants' purportedly illegal conduct, and that the stress has caused him to fail in his business. Defendants argue that plaintiffs' civil RICO claim

---

[6]If Bealer were allowed to press this claim further, he would be required to present a physician's testimony proving that he suffered the physical injuries he alleges as a result of having suffered emotional distress. Under Pennsylvania law, expert medical evidence must be presented before a plaintiff can recover for intentional infliction of emotional distress. *See Bolden v. Southeastern Pa. Transp. Auth.*, 21 F.3d 29, 35 (3d Cir. 1994) (citing *Kazatsky v. King David Memorial Park*, Inc., 527 A.2d 988 (Pa. 1987)).

must be dismissed because the actions of which they stand accused do not amount to predicate

acts of racketeering activity within the meaning of the statute.

Plaintiffs' civil RICO claims arise under 18 U.S.C. §§ 1962(c) and (d).[7] Under § 1962(c),

it is "unlawful for any person employed by or associated with any enterprise engaged in, or the

activities of which affect, interstate or foreign commerce, to conduct or participate, directly or

indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

18 U.S.C. § 1962(c). Under § 1962(d), it is unlawful "for any person to conspire to violate any of

the provisions" of subsection (c). *Id.* at § 1962(d). In order to plead a conspiracy under § 1962(d),

plaintiffs must first state a claim under § 1962(c). *Annulli v. Panikkar*, 200 F.3d 189, 198 (3d Cir.

1999). To state a claim under § 1962(c), a plaintiff must allege the following four elements: (1)

the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed

by or associated with the enterprise; (3) that the defendant participated, directly or indirectly, in

the conduct or affairs of the enterprise; and (4) that the defendant participated through a pattern

of racketeering activity that included at least two racketeering acts. *Id.*

 "Racketeering activity" is defined in the statute to comprise the state law-offenses of

murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, and

dealing in a controlled substance or listed chemical. *See* 18 U.S.C. § 1961(1). The term also

expressly includes a number of federal offenses, including mail fraud, wire fraud, and interstate

transportation of stolen property. *See id.* The Third Circuit has interpreted § 1961 to exclude,

---

[7]Defendants make arguments for dismissal based on the pleading requirements associated with 18 U.S.C. §§ 1961(a)-(d). Although the Amended Complaint does not specify which sections of RICO are the foundation for plaintiffs' claims, the sections that logically apply to plaintiffs' allegations are 18 U.S.C. §§ 1961(c) and (d) only.

however, theft of services, breach of contract, and intentional interference with a contract, reasoning that such claims are not among the offenses specifically enumerated in the statute and were not intended by Congress to fall within the ambit of RICO.[8] *See Annulli*, 200 F.3d at 199-200. Defendants are correct, on the basis of these exclusions, to assert that plaintiffs' allegations that defendants conspired to steal Bealer's actuarial services are insufficient to support a RICO claim. The first of plaintiffs' two RICO claims in Count Nine is therefore dismissed with prejudice.

Although Bealer's theft of services allegation will not support a RICO claim, Bealer does allege predicate acts falling within the ambit § 1961 insofar as he alleges that McCall and Petrelia, acting through the enterprises of Mutual Fire, FHA, and FHA Holding Co., used the U.S. mail to procure from him false and misleading actuarial reports and opinions with the object of using those reports and opinions to defraud potential customers and state insurance regulators. These allegations of concerted predicate acts are sufficient to satisfy the pleading requirements of a § 1964(d) conspiracy claim.

This is not the end of the analysis, however, because in order to have standing to litigate a civil RICO claim, a plaintiff must make a threshold showing (1) that he suffered an injury to business or property and (2) that the injury was proximately caused by the defendant's racketeering activities. *See Maio v. Aetna Inc.*, 221 F.3d 472, 483 (3d Cir. 2000); *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 260 (3d Cir. 1999). Plaintiffs in this case, for the reasons discussed

---

[8]Contemplating the implications of allowing plaintiffs to plead civil RICO violations for claims involving "garden-variety state law crimes, torts, and contract breaches," the Third Circuit concluded that to classify such claims as predicate acts of racketeering would be to allow civil RICO law to "swallow state civil and criminal law whole." *Annulli*, 200 F.3d at 200.

below, have failed to make the required threshold showing with respect to both of the injuries they allege.

In order to satisfy the injury requirement, a plaintiff must allege that he or she suffered actual injury to his or her business or property. *See Maio*, 221 F.3d at 483. This requirement has been construed to mean that a plaintiff must allege concrete financial loss. *Id.* at 483-484 (collecting cases). Fear of future prosecution, which is the first injury plaintiffs allege, is entirely intangible and, as such, does not meet the criterion of concreteness. Plaintiffs cannot establish standing to bring their RICO claim on the basis of an injury that has not yet occurred and that may, in fact, never occur.

The second injury plaintiffs allege is loss of business. Unlike fear of liability, loss of business is a concrete financial injury, which can serve as a basis for standing so long as the additional criterion of proximate causation is met. To make a determination about proximate causation, the court considers three factors: (1) the directness of the injury; (2) the ease of apportioning damages among other plaintiffs affected by the alleged violation; and (3) the possibility that others, more directly injured, could vindicate the claim. *Callahan*, 182 F.3d at 263-265 (citing the test set forth in *Holmes v. Security Investor Protection Corp.*, 503 U.S. 258 (1992)).

With respect to the element of directness, plaintiffs allege the following chain of events leading from defendants' alleged RICO violations to Bealer's alleged business injury: defendants engaged in racketeering activities; Bealer suffered stress when he realized his reports for defendants were being used to further these activities; this stress, combined with other stresses arising from his business relationship with defendants, caused Bealer's health to suffer; Bealer's

19

failing health caused him to neglect work for other clients; Bealer's neglect of his work caused him to miss deadlines; Bealer's failure to meet deadlines caused him to lose clients; Bealer's loss of clients caused his business to founder. So highly attenuated a chain of causation as that alleged by plaintiffs here demonstrates plainly that plaintiffs' alleged injuries are only remotely and indirectly related to defendants' alleged racketeering activities. The element of directness therefore militates against a finding of proximate causation in this case.

The second element of the analysis—difficulty of apportioning damages—also militates against such a finding. It would be extremely difficult for the court to apportion civil RICO damages between the Bealers, who were only indirectly injured by defendants' alleged racketeering activities, and potential plaintiffs who were in a position at the time of the alleged activities to be more directly injured by them, for example, Mutual Fire's and FHA's policy holders. "Where granting plaintiffs relief would require [the court] to apportion that relief among numerous plaintiffs of different standing, [the court is] inclined to find an absence of proximate causation for those less directly involved." *Callahan*, 182 F.3d at 264.

With respect to the third factor, which is vindication of claims by others, there are, in this case, other parties more directly injured who could vindicate the RICO claims plaintiffs have raised. Not only could the aforementioned policy holders sue defendants, the Commonwealth could initiate criminal proceedings against them, thereby providing an adequate deterrent to fraudulent conduct of the type alleged. *See id.* at 267. Given that all three of the *Holmes* factors counsel against a conclusion that defendants' activities proximately caused the only actual injury plaintiffs have alleged, Count Nine must be dismissed with prejudice for lack of standing.

### G. Marianne Bealer's Standing

Of the nine counts raised in plaintiffs' amended complaint, only two survive defendants' motion to dismiss. They are Count One, for breach of contract, and Count Six, for intentional interference with a contract.[9] Defendants argue, correctly, that plaintiff Marianne Bealer does not have standing to maintain these claims against defendants. Only those who are either parties to a contract or third-party beneficiaries of a contract may sue for breach or intentional interference. *See Dep't of Gen. Servs. v. Limbach Co.*, 862 A.2d 713, 720 (Pa. Commw. Ct. 2004); *Shiner v. Moriarty*, 706 A.2d 1228, 1238 (Pa. Super. Ct. 1998); *Manor Junior College v. Kaller's Inc.*, 507 A.2d  1245, 1249 (Pa. Super. Ct. 1986).

Marianne Bealer was not a party to her husband's contracts with defendants; nor can she be considered a third-party beneficiary under Pennsylvania law, because there is no claim in the Amended Complaint that both Bealer and defendants intended her, at the time of the formation of the contracts, to be benefitted by their performance. *See Scarpitti v. Weborg*, 609 A.2d 147, 150 (Pa. 1992) (setting forth the legal requirements for third-party beneficiary status). Marianne Bealer must be dismissed as a plaintiff to this action, because she lacks standing to pursue either of the surviving claims in the Amended Complaint.

---

[9]Count One cannot be maintained against individual defendants Petrelia and McCall, given the longstanding principle of agency law that an individual acting for a disclosed principal is not personally liable on a contract between the principal and a third party. *See Vernon D. Cox & Co. v. Giles*, 406 A.2d 1107, 1110 (Pa. Super. Ct. 1979) (noting that the rule applies in the case of a corporate officer who enters into a contract acting in his corporate capacity).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| Donald A. Bealer, individually and d/b/a Bealer Consulting, and Marianne C. Bealer, | : : : : | |
| Plaintiffs. | : | Civil Action |
| v. | : | No. 04-5915 |
|  | : | |
| The Mutual Fire, Marine and Inland Ins. Co., et al., | : : | |
| Defendants. | : : : : | |

ORDER

AND NOW, this _____ day of August, 2005, upon consideration of defendants'

motion to dismiss the Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, and plaintiffs' brief in opposition to the motion, it is hereby ORDERED that

(1) the motion is GRANTED as to Counts Two, Three, Four, Five, Seven, Eight, and

Nine of the Amended Complaint, which are DISMISSED with prejudice;

(2) the motion is GRANTED as to Count One of the Amended Complaint  with respect to

defendants Mike Petrelia and Frank McCall ONLY.

(2) the motion is GRANTED as to Counts One and Six of the Amended Complaint with

respect to plaintiff Marianne C. Bealer, who is hereby dismissed as a party to this action; and

(3) the motion is DENIED with respect to plaintiff Donald A. Bealer as to Counts One

and Six of the Amended Complaint.

_____
William H. Yohn, Jr., Judge