# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DONALD A. BEALER, individually and d/b/a BEALER CONSULTING,
Plaintiff,

v.

THE MUTUAL FIRE, MARINE and INLAND INSURANCE COMPANY, et al.,
Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION

NO. 04-5915

**Memorandum and Order**

YOHN, J.                                                                                                February ___, 2006

Defendants The Mutual Fire, Marine and Inland Insurance Company; The Franklin Homeowners Assurance Company; FHA Holding Company; Mike Petrelia; and Frank McCall have filed a motion for partial summary judgment, arguing that: 1) plaintiff's claims regarding breach of contract, except those claims concerning contracts allegedly breached in 2003, are barred by the statute of limitations; and 2) plaintiff's claims regarding intentional interference with contractual relations are either barred by the statute of limitations or totally without merit. For the reasons that follow, I will grant defendants' motion.

**I. Factual Background and Procedural History**

*Pro se* plaintiff[1] Donald A. Bealer ("Bealer") is an actuary whose business, Bealer

---

[1] Donald Bealer's wife, Marianne C. Bealer, was originally included as a plaintiff in this action. However, this court dismissed her as a plaintiff in an earlier decision.

1

Consulting, was engaged at various times from 1997 until 2003 to provide actuarial services for defendants. (Am. Compl. ¶ 6.) Plaintiff is a citizen of New Jersey. (*Id.* at ¶¶ 6-7.) Defendants Mutual Fire, Marine and Inland Insurance Company ("Mutual Fire"); Franklin Homeowners Assurance Company ("FHA"); and FHA Holding Company are Pennsylvania corporations with their principal places of business in Pennsylvania. (*Id.* at ¶ 6.) Defendants Mike Petrelia and Frank McCall are corporate officers of Mutual Fire. (*Id.* at ¶¶ 12-13.)

The following account of events is derived from plaintiffs' Amended Complaint. Bealer's business relationship with Mutual Fire, FHA, and FHA Holding Company began with an informal, oral agreement as to hours and rates for consulting work. (Am. Compl. ¶ 23.) This informal agreement was later memorialized in a written consulting agreement, which was executed on February 25, 1997. (*Id.* at Ex. 3(c)-3(m).) The terms of the written agreement, which was drafted by defendants, were more restrictive than the terms of the oral agreement, and less advantageous to plaintiff—for example, with respect to allowed billables. (*Id.* at ¶ 23.) This was an initial point of contention between the parties, but Bealer signed the agreement nevertheless and began work for Mutual Fire and FHA. (*Id.*)

The written agreement, which expired in June of 1997, was renewed by addendum for a term to begin on December 1, 1997 and end on December 31, 1997. (*Id.* at Ex. 4(a)-4(b).) After the renewal expired, Bealer performed additional work for defendants over the course of several years, pursuant to the terms of project-specific engagement letters, which outlined the scope of work, the rate of compensation, and the number of hours estimated to complete the work. (*Id.* at Ex. 5a (letter dated September 9, 1998); Ex. 7(f) (letter dated October 27, 2000); Ex. 7(g) (letter dated November 10, 1999); Ex. 8(a) (letter dated December 21, 2002); Ex. 9(b) (letter dated July

10, 2003).)

At various points during plaintiff's business relationship with defendants, disputes arose over hours billed, payments due, and the contents of reports. (Am. Compl. ¶¶ 23-32.) There were disagreements over whether Bealer had met his contractual obligations and whether defendants had met theirs. (*Id.*) Defendants delayed payment for reports, pending the completion of revisions that plaintiff believed to be unreasonable, inaccurate, and wasteful of his time and energy. (*Id.*) Some invoices were not paid in full. (*Id.*) Bealer threatened to delay or withhold reports, pending payment for past work. (*Id.*) He spent considerable time trying to resolve these disputes, causing him to neglect work for other clients. (*Id.*) He experienced stress and stress-related health problems that he attributes to the protracted conflicts he had with defendants. (*Id.*)

Over time, the relationship between Bealer and defendants deteriorated irretrievably, resulting in plaintiff filing a *pro se* complaint in the Philadelphia Court of Common Pleas in August 2004. Defendants filed preliminary objections, which were sustained, and the complaint was dismissed on November 30, 2004 for failure to state a claim upon which relief can be granted, but without prejudice to plaintiff's right to file an Amended Complaint pleading cognizable causes of action within twenty days of the date of the order. In lieu of filing an Amended Complaint in the Court of Common Pleas, plaintiff filed suit in this court on December 20, 2004, basing subject matter jurisdiction on diversity of citizenship. Bealer filed an Amended Complaint on April 18, 2005. The Amended Complaint brought nine counts: (1) breach of contract, (2) negligence, (3) slander, (4) libel, (5) negligent misrepresentation, (6) intentional interference with contractual relations, (7) fraud, (8) intentional infliction of emotional distress,

3

and (9) civil RICO.

The defendants filed a motion to dismiss on May 6, 2005, and this court partially granted the motion, dismissing counts (2), (3), (4), (5), (7), (8), and (9). *See Bealer v. Mutual Fire, Marine and Inland Ins. Co.*, 2005 WL 1819971 (E.D. Pa. Aug. 1, 2005). Additionally, the court found that count (1) could not be maintained against individual defendants Mike Petrelia and Frank McCall. Accordingly, only a breach of contract claim against the corporate defendants and the intentional interference with contractual relations claim survived this stage.

On October 12, 2005, defendants filed a motion for partial summary judgment. The defendants argue that Bealer's breach of contract claim, except insofar as it concerns contracts that were allegedly breached in 2003, is time barred. The defendants also argue that Bealer's intentional interference with contractual relations claims are either time barred or entirely without merit. As described below, the court will grant the defendants' motion for partial summary judgment.

**II. Legal Standard**

A court may only grant a motion for summary judgement, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996) (citation omitted).

When a court evaluates a motion for summary judgment, "[t]he evidence of the non-movant is to be believed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, "[a]ll justifiable inferences are to be drawn in [the non-movant's] favor." *Id.* "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Ideal Dairy*, 90 F.3d at 744 (citation omitted). However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990). The non-movant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which she bears the burden of production. *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

**III. Discussion**

    **A. Breach of Contract Claims**

In Pennsylvania, the statute of limitations for contract actions is four years. 42 Pa. Cons. Stat. Ann. § 5525(8). The statute of limitations period begins to run from the time of the breach of contract. *Romeo & Sons, Inc. v. P.C. Yezbak & Son, Inc.*, 652 A.2d 830, 832 (Pa. 1995) (citations omitted). However, "[u]nder Pennsylvania's discovery rule, the statute of limitations will not begin to run until 'the plaintiff reasonably knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.'" *In re*

*Mushroom Transp. Co., Inc.*, 382 F.3d 325, 338 (3d Cir. 2004) (quoting *In re TMI*, 89 F.3d 1106, 1116 (3d Cir. 1996). The discovery rule will only toll the statute of limitations in cases where the plaintiff shows that he or she has exercised "'reasonable diligence' in ascertaining the existence of the injury and its cause." *Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991).

Bealer commenced this action on December 20, 2004. Accordingly, any claims that concern contracts that were allegedly breached before December 20, 2000 will be time barred under the applicable statute of limitations, unless Bealer can show that the statute of limitations was tolled by the discovery rule.[2]

Three of Bealer's breach of contract claims are time-barred. This includes: 1) any claim relating to the contract Bealer executed with defendants in February of 1997, which he alleges defendants breached by attempting to change terms and failing to pay him in a timely manner (Am. Compl. ¶ 23; *see also* Am. Compl. Ex. 3c-3g); 2) any claim based on the actuarial opinion and year-end report for 1997 that Bealer completed for defendants, which he alleges the defendants breached by unnecessarily increasing his costs and then refusing to pay him for those increases (Am. Compl. ¶ 24); and 3) any claim regarding Bealer's 1999 project, which he alleges the defendants breached by causing him to go over budget by being unresponsive to requests for data and paying him $1,000 less than he deserved (Am. Compl. ¶ 26). Assuming that the defendants did breach those three contracts, the statute of limitations began to run on the date of

---

[2] The statute of limitations can also be tolled through equitable tolling, which operates "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 338-39 (3d Cir. 2004) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). However, plaintiff has not asserted equitable tolling and it does not appear applicable to his case.

the breach. Bealer does not argue that he was unaware of his injuries or their causes; indeed, he seems to have been constantly fighting with the defendants over the alleged breaches as they occurred. Thus, since all of these alleged breaches took place before December 20, 2000 (according to Bealer himself) and the discovery rule does not toll the statute of limitations, the claims are time barred.

Besides those three claims, Bealer's only other breach of contract claims appear to concern contracts that were allegedly breached in 2003. He has stated on several occasions that he has not presented any claims alleging that a contract was breached in 2000, 2001, or 2002. In Count 1 of Bealer's Amended Complaint (entitled "breach of contract") he only alleges wrongdoing regarding 2003 contracts. (Am. Compl. ¶¶ 33-34.) Additionally, in his deposition testimony, he explained that he was not claiming any damages for breach of contract for the years 2000, 2001, or 2002. (Bealer Dep. 126:9, 127:2-3, 127:16-17.) Finally, in responding to defendants' motion for summary judgment, Bealer stated "It is important to note that there were *no contract claims in 2000, 2001, and 2002*." (Pl.'s Resp. 3 (emphasis in original).)

It appears that the only point of departure for the parties about the breach of contract claim is a slight dispute as to how many contracts defendants allegedly breached in 2003. In defendants' summary judgment motion they state that the plaintiff alleged one contract was breached (Defs's Mot. Summ. J. 6); in his response, Bealer argues that two contracts were breached in 2003 (Pl.'s Resp. 1). However, this distinction is not meaningful at this juncture. Defendants have moved for summary judgment on this point pursuant only to the statute of limitations, and the statute of limitations will not bar any contracts that were breached in 2003.

Thus, this part of defendants' motion for summary judgment will be granted, and all

breach of contract claims besides the one or two concerning the 2003 contracts will be dismissed.

### B. Intentional Interference with Contract Claims

Pennsylvania courts have adopted § 766 of the Restatement (Second) of Torts, which sets out the elements of a claim for intentional interference with existing contractual relations. *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 1181-83 (Pa. 1978). This section of the Restatement reads:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the third person's failure to perform the contract.

Restatement (Second) of Torts § 766 (1979); *see also CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 384 (3d Cir. 2004) (describing standard). Hence, in order for Bealer to establish that the defendants interfered with Bealer's contracts with his clients, he must prove that: (1) the defendants intended to harm Bealer's contractual relations with his clients; (2) the defendants acted improperly, i.e. they were not privileged to act the way they acted; (3) the defendants induced or otherwise caused Bealer's clients to not perform the contracts; and (4) Bealer suffered pecuniary loss resulting from his clients' failure to perform the contracts.

Pennsylvania courts apply a two-year statute of limitations to intentional interference with contractual relations claims. 42 Pa. Cons. Stat. Ann. § 5524(3); *see also CBD Occupational Therapy, Inc.*, 357 F.3d at 383. The statute of limitations begins to run at the time that the cause of action accrues. *CGB Occupational Therapy, Inc.*, 357 F.3d at 383 (citing *Bohus v. Beloff*, 950 F.2d 919 (3d Cir. 1991). "A claim under Pennsylvania law accrues at 'the occurrence of the final

significant event necessary to make the claim suable.'" *Id.* at 384 (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 136 (3d Cir. 1998)).  The discovery rule, as discussed above, also applies.

Bealer filed this action on December 20, 2004.  Thus, any claims that accrued before December 20, 2002 will be barred by the statute of limitations, unless the statute of limitations was tolled by the discovery rule.

Bealer's most pronounced and well-defined claim of intentional interference is time barred.[3]  He claims that he had a thriving practice during March and April of 2001, but his battles with the defendants caused him to neglect his other clients and brought upon various health problems, the combination of which eventually crippled his business. (Am. Compl. ¶¶ 64, 65; Bealer Dep. 165:12-23.)  He explained "I pretty much lost all these clients . . . most of them due to events that started occurring after March of 2001." (Bealer Dep. 65:18-23.)  Thus, for this claim, the statute of limitations began to run once the final event necessary to make the claim suable occurred.  *CBD Occupational Therapy, Inc.*, 357 F.3d at 384.  Evaluating the elements of intentional interference, it seems that the final event will occur when the contractual relationship between the plaintiff and the third party ceases.  *See id.* at 383 (stating "the tort was not consummated until the contract was terminated . . . and legal damage was sustained").  Here, the

---

[3] In his Amended Complaint, Bealer described his intentional interference with contractual relations claim in six short paragraphs, none of which identified a specific contract with which defendants were to have interfered.  Because his Amended Complaint is so short on detail, it is difficult to unravel the claims and determine the dates of each instance of alleged interference.  Indeed, in his deposition and exhibits, he has removed all information that would serve to identify his clients because he fears that it would harm his business even further if the defendants contacted those clients.  Nonetheless, his deposition answers, which were in response to pointed questions aimed to adduce specifics about the claim, remain the clearest explanation of what exactly he is alleging.

tort was consummated when Bealer lost his clients, which he stated generally occurred in 2001. (Bealer Dep. 65:18-23.) In his deposition testimony, Bealer elaborated on these claims, and described four clients that he lost during this time period: 1) a Pennsylvania insurance company, which he lost in 2001 because his disability prevented him from completing work (Bealer Dep. 66:6-13); 2) a client from New Jersey, which he also lost in 2001 because he was late completing work (Bealer Dep. 73:17-24); 3) the New Jersey Insurance Department, which he lost in 2001 (Bealer Dep. 80:19-25); and 4) an unnamed client, which he lost in 2000 (Bealer Dep. 75:16-23.) Accordingly, based on Bealer's own statements, the statute of limitations for all of these claims began to run (at the latest) sometime in 2001. Also, since Bealer has presented no evidence showing that he was unable to ascertain the existence or cause of these injuries, the discovery rule does not toll the statute of limitations. Thus, any claims regarding these clients are time barred.

To the extent that Bealer presents intentional interference with contractual relations claims that are not barred by the statute of limitations, he presents no evidence to support the claims.[4] Instead, his various arguments rest almost entirely on his own conjecture. Indeed, in the

---

[4] Bealer also argues that the "[d]efendants filed this motion prior to completion of discovery . . . knowing that I did not have a copy of the deposition and that I did not have proof of contact with clients." (Pl.'s Resp. 4.) However, the court issued a discovery order on October 20, 2005, and Bealer received all of the discovery documents before he filed his response. Additionally, his response attached pages of the deposition, so he also had access to that information before he responded. Thus, it is not clear how he was harmed by the timing of the filing. Bealer also seems to argue that he is still investigating his case. (Pl.'s Reply 1.) However, a Rule 56(f) motion is the appropriate manner in which to seek a delay. And, even if I were to construe Bealer's statement as a properly filed Rule 56(f) motion, he has failed to provide any explanation for his laggard pace. The Third Circuit has explained that a party seeking relief under Rule 56(f) must move beyond generalities and identify with specificity "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not been previously obtained." *Lunderstadt v. Colafella*, 885 F.2d 66, 71 (3d Cir.

majority of Bealer's claims of intentional interference, he does not allege that the defendants had any interaction with his clients whatsoever, despite the Restatement's requirement that the defendant be guilty of "inducing or otherwise causing *the third person* not to perform the contract." Restatement (Second) of Torts § 766 (emphasis added).

     For example, he argues that he was unable to complete work for an unnamed company because the current lawsuit monopolized his time. (Bealer Dep. 140:23-24.) However, he has presented no evidence whatsoever that the defendants somehow "induc[ed] or otherwise caus[ed] the [unnamed company] not to perform the contract," Restatement (Second) of Torts § 766, rather Bealer himself was unable to perform. Further, Bealer is the plaintiff in this lawsuit and presumably made the decision to represent himself; he cannot use his own tactical choices as evidence of the defendants' interference. Bealer also discussed a Florida self-insured company in reference to this claim, but noted that he still has that company as a client. (Bealer Dep. 82:15.) There is no evidence of any wrongdoing on the part of defendants as related to this company; Bealer still has it as a client. Finally, Bealer claims that he did not get two other jobs because he did not have the requisite recent experience. (Bealer Dep. 164:16-20, 165:3-7.) Again, Bealer has offered no evidence at all that the defendants contacted these companies or somehow caused the companies not to contract with him. Further, it is not enough that Bealer allege that he hoped that he and these companies would contract, he must show "a reasonable likelihood or probability that an anticipated business arrangement would have been consummated." *Advanced*

---

1989) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 140 (3d. Cir. 1988)). Bealer has offered none of those specifics; he continues to rely entirely on conjecture, and despite having completed discovery, has shown no progress in adding layers of evidence to his speculative complaint. Thus, I will rule upon his intentional interference with contractual relations claims at this time.

*Power Systems, Inc. v. Hi-Tech Systems, Inc.*, 801 F. Supp. 1450, 1459-60 (E.D. Pa. 1992) (citing *Cloverleaf Development, Inc. v. Horizon Financial F.A.*, 500 A.2d 163, 167 (Pa. Super. Ct. 1985)).  Bealer has failed to present any evidence describing his likelihood of being chosen for these jobs.  Thus, a reasonable juror could not find that Bealer is correct on these issues and summary judgment is appropriate.

While Bealer has provided more information regarding his claim that defendants interfered with his relationship with the Pennsylvania Insurance Department ("Department"), even that claim is primarily "an inference based upon a speculation or conjecture [and thus] does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson*, 914 F.2d at 382 n.12 (3d Cir. 1990).

The Department, which regulates insurance firms, *see* Commonwealth of Pennsylvania Insurance Department Mission Statement, http://www.ins.state.pa.us/ins/lib/ins/whats_new/vision_mission_Poster.pdf (explaining that the Department's goal is to "provide a premier regulatory environment which promotes the best insurance marketplace to serve consumers"), apparently also hired Bealer to examine certain insurance companies (Bealer Dep. 39:3-6).  The defendants have stated that they provided the Department with a copy of Bealer's Amended Complaint (Defs.' Mot. Dismiss 3 n.2), and Bealer claims that after that occurred, the Department's attitude toward him changed (Bealer Dep. 35:8-10).  However, the defendants' correspondence with the Department was entirely professional; the Department regulates Pennsylvania insurance companies, so it was appropriate for the defendants to alert the Department about nascent litigation.  Further, the letters that the defendants wrote to the Department about this topic were perfectly businesslike: they contained

no derogatory statements about Bealer and evince no desire to harm Bealer.  (*See* Pl.'s Resp. Ex. B.)  Indeed, in his deposition testimony, Bealer stated that it was not wrong of the defendants to provide the Department with a copy of the complaint.  (Bealer Dep. 150:12-13.)  While Bealer does appear certain that something untoward occurred during this correspondence, he presents no evidence to support his suspicion.  This fails to heed the Third Circuit's warning that "[a]t summary judgment, a plaintiff cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000) (citation omitted).

Further, even Bealer's evidence of the Department's purported change in attitude toward him is based entirely on his own speculation and lacks a solid foundation of fact.  Bealer alleges that sometime after the Department received a copy of his complaint, it warned him that "if you don't have [the project completed] by this [date], we won't be able to use you anymore."  (Bealer Dep. 40:2-4.)  Bealer alleges that this language was similar to that used by the defendants.  (Bealer Dep. 40:2-5.)  However, there is nothing unique or inappropriate about a company emphasizing deadlines, so this does not demonstrate tampering on the part of defendants.  Additionally, Bealer argues that of all his clients, only the Department and the defendants were "overly concerned" about the narrative that he would write to explain his calculations.  (Bealer Dep. 41:7-10.)  However, this does not show, in any way, that defendants "intentionally and improperly interfere[d] with the performance of [the] contract" between Bealer and the Department.  Restatement (Second) of Torts § 766.  Moreover, in the email that Bealer provided to illustrate this assertion, the Department's discussion of the narrative seems completely innocuous.  The email states, "We need you to put your conversations and discussions into a

13

written narrative format that we will be able to share with the Company. This is imperative so we can explain our position to the Company and the rationale for our conclusions." (Defs.' Mot. Summ. J. Ex. R7.) Accordingly, Bealer presents no evidence that his relationship with the Department actually changed, let alone that it was damaged by the defendants.

In sum, the statute of limitations bars Bealer's primary intentional interference with contractual relations claim. In presenting his other claims, he does no more than simply reassert the factually unsupported allegations contained in his pleadings, *see Jones*, 214 F.3d at 402, and fails to present any evidence to support his claim that the defendants were guilty of "inducing or otherwise causing the third person not to perform the contract," Restatement (Second) of Torts § 766. Thus, his allegations could not support a reasonable jury's finding that the defendants intentionally interfered with his contractual relationships. Accordingly, defendants' motion will be granted and all of Bealer's intentional interference with contractual relations claims will be dismissed.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD A. BEALER, individually and d/b/a BEALER CONSULTING, Plaintiff, : : : : : : v. : : THE MUTUAL FIRE, MARINE and INLAND : INSURANCE COMPANY, et al., : Defendants. : : : : : | CIVIL ACTION NO. 04-5915 |

## Order

AND NOW, this _____ day of February, 2006, upon consideration of defendants' motion for partial summary judgment (Doc. No. 33), plaintiff's response, defendants' reply, and plaintiff's reply thereto, IT IS HEREBY ORDERED that defendants' motion for partial summary judgment is GRANTED and judgment is entered in favor of the defendants and against the plaintiff on Count 6 of the amended complaint and on Count 1 of the amended complaint except to the extent that it alleges a breach of a contract or contracts during 2003.

Trial on the remaining claim(s) in Count 1 is scheduled for May 15, 2006 at 10:00 a.m.

Defendants' counsel shall call Magistrate Judge Charles B. Smith within 30 days of the date of this order to arrange a settlement conference with Judge Smith sometime prior to the trial date.

_____
William H. Yohn, Jr., Judge