IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD A. BEALER, individually and d/b/a BEALER CONSULTING, Plaintiff, | : : : : : | |
| v. | : : | CIVIL ACTION |
| THE MUTUAL FIRE, MARINE and INLAND INSURANCE COMPANY, et al., Defendants. | : : : : | NO. 04-5915 |

**Memorandum and Order**

YOHN, J.                                                                                                  May ___, 2006

      Plaintiff Donald Bealer brings this motion for reconsideration, challenging numerous aspects of the court's February 1, 2006 Memorandum and Order that granted partial summary judgment to the defendants, The Mutual Fire, Marine and Inland Insurance Company; The Franklin Homeowners Assurance Company; FHA Holding Company; Mike Petrelia; and Frank McCall.  For the reasons that follow, the court will deny Bealer's motion for reconsideration.

**I.      Factual and Procedural Background[1]**

      *Pro se* plaintiff Donald A. Bealer ("Bealer") is an actuary whose business, Bealer Consulting, was engaged at various times from 1997 until 2003 to provide actuarial services for defendants.  (Am. Compl. ¶ 6.)  Plaintiff is a citizen of New Jersey.  (*Id.* at ¶¶ 6-7.)  Defendants Mutual Fire, Marine and Inland Insurance Company ("Mutual Fire"); Franklin Homeowners Assurance Company; and FHA Holding Company are Pennsylvania corporations with their principal places of business in Pennsylvania.  (*Id.* at ¶ 6.)  Defendants Mike Petrelia and Frank

---

[1] Much of this section is drawn verbatim from the court's February 1, 2006 opinion.

McCall are corporate officers of Mutual Fire. (*Id.* at ¶¶ 12-13.)

Over time, the relationship between Bealer and the defendants deteriorated irretrievably, resulting in the plaintiff filing a *pro se* complaint in the Philadelphia Court of Common Pleas in August 2004. The defendants filed preliminary objections, which were sustained, and the complaint was dismissed on November 30, 2004 for failure to state a claim upon which relief can be granted, but without prejudice to the plaintiff's right to file an Amended Complaint pleading cognizable causes of action within twenty days of the date of the order. In lieu of filing an Amended Complaint in the Court of Common Pleas, the plaintiff filed suit in this court on December 20, 2004, basing subject matter jurisdiction on diversity of citizenship. Bealer filed an Amended Complaint on April 18, 2005. The Amended Complaint brought nine counts: (1) breach of contract, (2) negligence, (3) slander, (4) libel, (5) negligent misrepresentation, (6) intentional interference with contractual relations, (7) fraud, (8) intentional infliction of emotional distress, and (9) civil RICO.

The defendants filed a motion to dismiss on May 6, 2005, and this court partially granted the motion, dismissing counts (2), (3), (4), (5), (7), (8), and (9). *See Bealer v. Mutual Fire, Marine and Inland Ins. Co.*, No. 04-5915, 2005 WL 1819971 (E.D. Pa. Aug. 1, 2005). Additionally, the court found that count (1) could not be maintained against individual defendants Mike Petrelia and Frank McCall. Accordingly, only a breach of contract claim against the corporate defendants and the intentional interference with contractual relations claim survived this stage.

On October 12, 2005, the defendants filed a motion for partial summary judgment. The defendants argued that Bealer's breach of contract claim, except insofar as it concerned contracts

2

that were allegedly breached in 2003, was time barred. The defendants also argued that while Bealer had presented many vague allegations, he had only presented enough evidence to establish -- even arguably -- one intentional interference with contractual relations claim, and that claim was time barred.

On February 1, 2006, the court granted the defendants' motion for partial summary judgment. The court concluded that Bealer's claims alleging that the defendants breached various contracts between 1997 and 1999 were time barred.[2] Thus, only Bealer's breach of contract claims regarding one or two contracts allegedly breached in 2003 remained at issue. The court also found time barred Bealer's intentional interference with contractual relations claim that alleged that he had a thriving practice until March or April of 2001, but his battles with the defendants caused him to neglect his other clients and brought upon various health problems, the combination of which eventually crippled his business.[3] Further, the court ruled that no reasonable juror could find that any of his other vague allegations entitled him to relief through

---

[2] Specifically, the court found that claims concerning the following contracts were time barred: 1) the contract Bealer executed with defendants in February of 1997, which Bealer alleges defendants breached by attempting to change terms and failing to pay him in a timely manner (Am. Compl. ¶ 23; *see also* Am. Compl. Ex. 3c-3g); 2) the actuarial opinion and year-end report for 1997 that Bealer completed for defendants, which he alleges the defendants breached by unnecessarily increasing his costs and then refusing to pay him for those increases (Am. Compl. ¶ 24); and 3) Bealer's 1999 project, which he alleges the defendants breached by causing him to go over budget by being unresponsive to requests for data and paying him $1,000 less than he deserved (Am. Compl. ¶ 26).

[3] The court ruled that intentional interference with contractual relations claims regarding the following clients were time barred: 1) a Pennsylvania insurance company, which Bealer lost in 2001 because his disability prevented him from completing work (Bealer Dep. 66:6-13); 2) a client from New Jersey, which he also lost in 2001 because he was late completing work (Bealer Dep. 73:17-24); 3) the New Jersey Insurance Department, which he lost in 2001 (Bealer Dep. 80:19-25); and 4) an unnamed client, which he lost in 2000 (Bealer Dep. 75:16-23.)

an intentional interference with contractual relations cause of action.[4]

On February 13, 2006, Bealer filed a motion seeking reconsideration of the court's February 1, 2006 opinion,[5] which alleges that the court committed various errors in granting partial summary judgment to the defendants.

## II. Legal Standard

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Reconsideration is proper where the moving party demonstrates one of three grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). Motions for reconsideration "may not be used 'as a means to argue new facts or issues that inexcusably were not presented to the court in

---

[4] These unsupported "claims" included allegations that the defendants interfered with his relations with: an unnamed company, for whom he was unable to complete work because the current lawsuit monopolized his time (Bealer Dep. 140:23-24); a Florida self-insured company that he still has as a client (Bealer Dep. 82:15); two other jobs that Bealer claimed he did not get because he did not have the requisite recent experience (Bealer Dep. 164:16-20, 165:3-7); and the Pennsylvania Insurance Department (Bealer Dep. 35:8-10). To the extent that Bealer seeks reconsideration of this part of the opinion, the court reiterates its previous ruling: because Bealer has presented no evidence beyond his unsupported allegations that the defendants took purposeful action designed to harm Bealer's contractual relations, no reasonably jury could find in his favor on these claims.

[5] This submission was originally entitled "Plaintiff's Appeal Of Court's Order To Grant Defendants' Motion For Partial Summary Judgment," but on February 3, 2006, the court issued an order ruling that the document should be restated to be "plaintiff's motion to reconsider the court's order."

the matter previously decided.'" *Johnson v. Diamond State Port Corp.*, 50 Fed. Appx. 554, 560 (3d Cir. 2002) (quoting *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990)); *see also Rock v. Voshell*, No. 05-1468, 2005 WL 3557841, at *1 (E.D. Pa. Dec. 29, 2005) ("Mere dissatisfaction with the Court's ruling is not the basis for such a reconsideration, nor can such a motion be used as a means to put forth additional arguments which could have been made but which the party neglected to make.").

**III.    Discussion**

Bealer argues that the court erred in its February 1, 2006 opinion in six ways: 1) by relying on facts not in the record; 2) by not tolling the statute of limitations for his breach of contract and intentional interference with contractual relations claims through application of the discovery rule; 3) by redefining the defendants' motion for summary judgment; 4) by relying on law that was too old; 5) by issuing an opinion that was inconsistent with new facts that Bealer has since provided; and 6) by issuing a decision that is contrary to public policy.[6] Bealer argues that had the court not committed these errors, it would not have granted summary judgment to the defendants on his entire intentional interference with contractual relations claim and part of his breach of contract claim. In order to properly consider these allegations, it is useful to reiterate the applicable legal standards.

In Pennsylvania, the statute of limitations for contract actions is four years. 42 Pa. Cons. Stat. Ann. § 5525(8). The statute of limitations period begins to run from the time of the breach. *Romeo & Sons, Inc. v. P.C. Yezbak & Son, Inc.*, 652 A.2d 830, 832 (Pa. 1995) (citations omitted).

---

[6] The court notes that Bealer continues to be unable or unwilling to cite to caselaw, so his arguments tend to be amorphous.

5

A contract is breached upon the "non-performance of any contractual duty of immediate performance." *Barnes v. McKellar*, 644 A.2d 770, 775 (Pa. Super. Ct. 1994) (quoting *Camenisch v. Allen*, 44 A.2d 309, 310 (Pa. Super. Ct. 1945).

Under Pennsylvania law, a cause of action for intentional[7] interference with contractual relations has four elements: "(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 384 (3d Cir. 2004). The statute of limitations for intentional interference with contractual relations claims is two years. *Id.* at 383; *Bednar v. Marino*, 646 A.2d 573, 577 (Pa. Super Ct. 1994). The statute of limitations begins to run at the time that the cause of action accrues. *CGB Occupational Therapy, Inc.*, 357 F.3d at 383 (citing *Bohus v. Beloff*, 950 F.2d 919 (3d Cir. 1991). "A claim under Pennsylvania law accrues at 'the occurrence of the final significant event necessary to make the claim suable.'" *Id.* at 384 (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 136 (3d Cir. 1998)).

Additionally, "[u]nder Pennsylvania's discovery rule, the statute of limitations will not begin to run until 'the plaintiff reasonably knows, or reasonably should know: (1) that he has

---

[7] Courts sometimes refer to this cause of action as "intentional interference with contractual relations," *see Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000), and sometimes refer to it as "tortious interference with contractual relations," *see CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 384 (3d Cir. 2004); however, the disparity appears to be limited to the title. *See CGB Occupational Therapy, Inc.*, 357 F.3d at 384 (quoting *Crivelli* for the elements of the cause of action).

been injured, and (2) that his injury has been caused by another party's conduct.'" *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 338 (3d Cir. 2004) (quoting *In re TMI*, 89 F.3d 1106, 1116 (3d Cir. 1996). The party invoking the discovery rule has the burden of proving that it applies.[8] *Cappelli v. York Operating Co., Inc.*, 711 A.2d 481, 485 (Pa. Super. Ct. 1998). Bealer commenced this action on December 20, 2004. Thus, as the court explained in the February 1, 2006 opinion, unless Bealer can show that an exception that tolls the running of the statutes of limitations (like the discovery rule) applies, his 1997 through 1999 breach of contract claims and his 2000 and 2001 intentional interference with contractual relations claims are time barred.

### A. Factual Disputes

Bealer identifies three statements from the court's February 1, 2006 opinion that he believes are not supported by the record. First, he argues that his initial contract with the defendants was executed in May of 1997, not, as the court stated, in February of 1997. Second, he argues that he never "threatened to delay or withhold reports" from the defendants, as the court stated that he did in its "Factual Background and Procedural History" section. Third, he argues that he did not fight with the defendants when they breached the early contracts, as the court stated that he did while discussing his breach of contract claims.

Even if all of Bealer's assertions were correct (which they are not), the disposition of his case would not be altered. His first issue is immaterial because regardless of whether the contract was executed in February or May of 1997, the claim accrued more than four years before he filed his complaint. The claim is therefore time barred unless Bealer demonstrates the applicability of the discovery rule, and his dispute about the date of execution does not implicate

---

[8] For more discussion of the discovery rule, *see infra* Part III.B.

that tolling rule.

Second, the statement that Bealer threatened to withhold reports from the defendants was included only to describe the parties' history. Because the court did not rely on that statement in granting partial summary judgment to the defendants, it is of no significance now.

Third, Bealer's argument that he was not fighting with the defendants about their alleged breaches also does not affect the resolution of the case. Whether Bealer fought with the defendants or not, the statute of limitations began running on his contract claims when he aware that the contracts had been breached and that the defendants had breached them. *See In re Mushroom Transp. Co., Inc.*, 382 F.3d at 338. The three breach of contract claims that the court ruled were time barred alleged that the defendants caused Bealer's costs to increase and then did not pay him all of the money to which he was entitled. Thus, the key issue is not whether Bealer *fought* with the defendants about being owed money, but whether he *knew* that they owed him money. He has presented no evidence that he was unaware of the defendants' alleged debts when they became due. Thus, the "facts are so clear that reasonable minds cannot disagree," and the court properly "treat[ed] the commencement of the statute of limitations as a matter of law." *Sadtler v. Jackson-Cross Co.*, 587 A.2d 727, 732 (Pa. Super. Ct. 1991).

    **B.**    **Bealer's Awareness of His Injuries**

Bealer next argues that he was not aware of his injuries -- for either the breach of contract or the intentional interference with contractual relations claims -- when they were inflicted. Thus, Bealer claims that the discovery rule should toll his statutes of limitations.

"[T]he salient point giving rise to [the discovery rule's] application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what

8

cause." *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). The Pennsylvania Supreme Court has explained that the reasonable diligence standard evaluates whether the plaintiff "exhibited 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others.'" *Id.* (quoting *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000). The test focuses on whether the plaintiff had reason to inquire about the existence and cause of an injury. *See id.* ("'[T]here are [very] few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful.'" (quoting *Crouse*, 745 A.2d at 611)). "[T]he very essence of the discovery rule in Pennsylvania is that it applies only to those situations where the nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect an injury," *Dalrymple v. Brown*, 701 A.2d 164, 170 (Pa. 1997); the rule exists to avoid punishing a party's "blameless ignorance" of a cause of action, *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983).

"The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence." *Dalrymple*, 701 A.2d at 167. That party must "allege and prove facts which show that he made reasonable efforts to protect his interests and which explain why he was unable to discover the operative facts for his cause of action sooner than he did." *Bickell v. Stein*, 435 A.2d 610, 612 (Pa. Super. Ct. 1981).

### 1. Breach of Contract Claims

Bealer first argues that while the defendants breached the contracts by increasing his costs and then failing to pay him for those increased costs, he did not realize until later that this was

part of a "pattern of abuse, thefts, and extortion." This is consistent with Bealer's tendency to present his claims expansively. Nonetheless, the issue is when he was aware that the individual contracts were breached. *See Am. Motorists Ins. Co. v. Farmers Bank and Trust Co.*, 644 A.2d 1232, 1235 (Pa. Super. Ct. 1994) (stating "where installment or periodic payments are owed, a separate and distinct cause of action accrues for each payment as it becomes due"). Because Bealer has not presented evidence that he was unaware that the defendants breached the contracts at the times that they allegedly did so, a reasonably jury could not find that the statute of limitations for these claims was tolled and the court properly granted summary judgment to the defendants.

### 2. Intentional Interference with Contractual Relations Claims

Bealer also argues that the court erred in failing to apply the discovery rule to the 2000 and 2001 intentional interference with contractual relations claims that the court ruled were time barred. *See supra* note 3 (listing the relevant claims). Bealer has alleged that the defendants intentionally interfered with his contractual relations in two ways. The first is described specifically in Bealer's complaint, in which he alleged that the "[d]efendants took purposeful action specifically intended to harm the relationship between Mr. Bealer and his other clients, or prevent a prospective relationship from occurring in that [d]efendants constantly drained Mr. Bealer's time with stolen services and wasted time fighting off bizarre, 'after the fact' contracts and dealing with billing issues." (Am. Compl. ¶ 65.) Second, Bealer argues that the defendants interfered with his contractual relations by causing him so much stress that he became "disabled" and thus unable to discharge his other contractual obligations.

To the extent that Bealer predicates his intentional interference with contractual relations

10

claims on allegations that the defendants caused him to expend excessive time by stealing his services, presenting after-the-fact contracts, and engaging in irregular billing practices, the discovery rule does not apply. Bealer knew that this conduct injured him (by monopolizing his time and causing him to lose his other clients) and knew that the defendants caused the injury (it was the defendants that monopolized his time) at the time that the injury occurred. Reasonable minds could not differ on that conclusion. Thus, as the court ruled in its February 1, 2006 opinion, insofar as Bealer bases his intentional interference with contractual relations claims upon these actions of the defendants, the claims accrued in 2000 or 2001 and are time barred.

Bealer also alleges that in March and April of 2001, due to the defendants' demands upon him, he suffered a "disability" that was so severe that it caused "the loss of practically all [of his] clients." (Pl.'s Resp. to Defs.' Mot. for Summ. J. 5.) He alleges that in 2001 he suffered from a weight gain, agitation, and severe exhaustion.[9] Bealer claims that in late 2003 or early 2004 he began to suspect that stress from working with the defendants caused his condition. Further, on May 20, 2004, Bealer was diagnosed with hypogonadism of uncertain etiology. He claims that in August of 2004 a physician determined that the hypogonadism was caused by obesity or stress, although he has not provided any documentation for that diagnosis. Nonetheless, he argues that it was not until 2004 that he should have known that the defendants had caused his medical condition.

---

[9] Bealer also presents evidence showing that he later suffered from such ailments as night sweats, osteoporosis, psoriasis, and hypogonadism. However, the present statute of limitations issue only concerns the defendants' alleged interference with Bealer's contracts in March and April of 2001. Symptoms and injuries that Bealer experienced in years subsequent to 2001 could not have impaired Bealer's ability to perform contracts in 2001, and thus are not relevant to this inquiry.

As stated above, the burden is on Bealer to establish his "inability to know of the injury despite the exercise of reasonable diligence," *Dalrymple*, 701 A.2d at 167, and explain "why he was unable to discover the operative facts for his cause of action sooner than he did," *Bickell*, 435 A.2d at 612. Here, Bealer has not provided any evidence showing why he was able to determine in 2004 that the defendants were the cause of his ailments but not in 2001. In 2001, when he was allegedly injured so severely that he suffered from a disability and was unable to perform his contractual obligations, he apparently took no steps to discover the cause of the injuries. He has presented two doctor's notes describing 2001 appointments, neither of which contains any indication that Bealer asked for professional assistance in isolating the cause of his injuries or ever reported anything remotely similar to a "disability"; rather, his office visits seemed to focus on a routine physical examination with minor complaints and an ear infection. Pennsylvania courts have stated that "'[a] diligent investigation may require one to seek further medical examination as well as competent legal representation,'" *Bowe v. Allied Signal Inc.*, 806 A.2d 435, 440 (Pa. Super. Ct. 2002) (quoting *Cochran v. GAF Corp.*, 666 A.2d 245, 249 (Pa. 1995)), which presumably also requires a party to alert medical personnel to the existence of relevant symptoms. In any event, it is clear that Bealer did not make a "reasonable effort to discover the cause of [his 2001] injury under the facts and circumstance present in the case." *Cochran*, 666 A.2d at 249 (internal quotation marks omitted).

The key inquiry is whether Bealer was unable to know, despite the exercise of reasonable diligence, that he was injured and that the defendants were the cause at the time the injury was inflicted. *See Fine*, 870 A.2d at 274-75. The court concludes that the discovery rule is inapplicable to this case because if Bealer was able to attribute his injuries to the defendants in

12

2004 he also should have been able to do so in 2001.[10]  Often, in discovery rule cases involving medical conditions, a plaintiff isolates the cause of his injury after consultation with a doctor. *See, e.g.*, *Caro v. Glah*, 867 A.2d 531, 534 (Pa. Super. Ct. 2004) (concluding that the plaintiff "did not become aware of her injury and who caused it until she consulted with Dr. Ridella"). Here, however, Bealer arrived at his conclusion that the defendants were responsible for his injuries on his own, without an explicit medical diagnosis.  Thus, he had the same ability to allege that the defendants injured him in 2001 as he did in 2004, *see Fine*, 870 A.2d at 858 ("Mistake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute"), and the court concludes that reasonable minds would not differ in finding that Bealer knew or should have known on the exercise of reasonable diligence of his injury and its cause, and thus rules that the discovery rule does not apply as a matter of law, *see id.* at 858-58.

### C.     Court's Ruling on Intentional Interference of Contractual Relations Claims

Bealer argues that the defendants sought summary judgment against Bealer on his intentional interference with contractual relations claim only on the grounds that one claim was time barred, and that the court's grant of summary judgment to the defendants on other claims because they were "entirely without merit" provided the defendants with relief beyond what they sought.  However, this argument fails to take into account the considerable difficulty that the

---

[10] There are other problems with Bealer's claim.  First, in 2004, when he decided that the defendants were the cause of his injury, he was suffering from different symptoms than he suffered in 2001, when his contractual interference claims are set.  While he harbors no doubts on the subjects, he has presented no individualized medical evidence linking the 2001 and 2004 ailments to each other or to the defendants.  Second, this entire inquiry is rather far afield of the underlying intentional interference with contractual relations claim, for which Bealer still has presented no evidence of "purposeful action on the part of the defendant, specifically intended to harm the existing relation." *CGB Occupational Therapy, Inc.*, 357 F.3d at 384.

defendants (and the court) faced in locating discrete intentional interference with contractual relations claims in Bealer's filings. The defendants argued that they were only able to ascertain a single claim, and that that claim was time barred. They argued that they attempted to identify other potential claims, but could not do so because Bealer refused to provide any specific details to support his vague allegations. Specifically, they stated:

> Plaintiff failed to identify any other instances that could be considered tortious interference during his deposition despite being repeatedly requested to do so. On many occasions he simply refused to identify the contracts and or the persons with whom Defendants allegedly interfered . . . . Under these circumstances, then, the only tortious interference claim stated and the only tortious interference claim to which Plaintiff is willing to testify, or provide any discovery, arose in March or April of 2001.

(Defs.' Mot. for Summ. J. 10.) Further, in its reply brief, the defendants concluded that "[n]one of [Bealer's] testimony establishes tortious interference in 2004 or 2005," and that the "testimony lacks any reference to Defendants' knowledge that Plaintiff might have a relationship to these third parties or any wrongdoing on the part of Defendants." (Defs.' Reply 4.) Thus, the defendants sought judgment on the entire intentional interference with contractual relations claim. (Defs.' Mot. for Summ. J. 10.)

In its February 1, 2006 opinion, the court considered the viability of other intentional interference with contractual relations claims, and agreed with the defendants that Bealer had not provided sufficient information to establish any claims that were not time barred. While the court used the phrase "completely without merit," and Mutual Fire described the claims as essentially nonexistent, this difference is in terms, not meaning. Indeed, the confusion on this issue is a result of Bealer's refusal to circumscribe his claims with any precision.

Bealer also lists three contracts with which he claims the defendants interfered that he

believes received insufficient attention in the court's opinion. He identifies the third parties as "other actuaries," "Pennsylvania Insurance Department," and "a New Jersey company." In Bealer's discussion of the other actuaries he argues about RICO violations, defamation, and confidentiality agreements; because the opinion that he asks this court to reconsider only ruled upon breach of contract and intentional interference with contractual relations claims, these arguments are irrelevant.[11] Again, he refuses to name the actuaries at issue or provide any concrete information establishing a claim. The court discussed Bealer's claim regarding the Pennsylvania Insurance Department in its February 1, 2006 opinion, and in his present motion Bealer simply repeats arguments previously raised. *See Rock v. Voshell*, No. 05-1468, 2005 WL 3557841, at *1 (E.D. Pa. Dec. 29, 2005) ("Mere dissatisfaction with the Court's ruling is not the basis for such a reconsideration."). Finally, in the court's prior opinion it discussed a New Jersey company, and found that a claim concerning a contract with that company was barred by the statute of limitations. It is not clear if the New Jersey company that Bealer now refers to is the same or a different company than the one discussed in the court's opinion. Regardless, he does not present adequate evidence to justify reconsideration of the court's opinion on this or any of his intentional interference with contractual relations claims.

    **D.**    **Court's Reliance on Old Law**

Bealer believes that the court should not have looked to § 766 of the Restatement (Second) of Torts in ruling upon his intentional interference with contractual relations claims

---

[11] Here, and in other places, Bealer attempts to resurrect claims that the court disposed of in its August 1, 2005 opinion that granted in part the defendants' motion to dismiss. The court already denied Bealer's motion to reconsider that opinion on August 26, 2005. To the extent that Bealer asks the court to again reconsider that decision, the court declines to do so.

because this edition was published in 1979. However, the Pennsylvania Supreme Court adopted that section of the Restatement and has not disavowed that approach. *See Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1388 (3d Cir. 1991); *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 1181-83 (Pa. 1978).

### E.     New Facts

The "new facts" that Bealer claims to present are contained in various documents that he has attached to his motion for reconsideration. The documents primarily deal with what Bealer believes are the defendants' accounting irregularities and other bad acts. However, even if Bealer is correct that the defendants are engaged in fraudulent activity, it is not at all relevant to his breach of contract and intentional interference with contractual relations claims. Additionally, Bealer has included some articles about corporate scandals and reorganization, which are also irrelevant to his claims.

### F.     Public Policy

In this section Bealer first asks the court to reconsider his RICO and negligence claims, which were dismissed in the court's August 1, 2005 opinion. *See supra* note 11. Bealer also accuses the defendants of other illegalities, such as extortion, bribery, and interference with commerce, *inter alia*. However, these acts have nothing to do with the court's February 1, 2006 opinion, which his motion for reconsideration ostensibly is challenging.

For these reasons, the court will deny Bealer's motion for reconsideration.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD A. BEALER, individually and d/b/a BEALER CONSULTING,<br>Plaintiff,<br><br>v.<br><br>THE MUTUAL FIRE, MARINE and INLAND INSURANCE COMPANY, et al.,<br>Defendants. | CIVIL ACTION<br><br>NO. 04-5915 |

## Order

AND NOW, this _____ day of May, 2006, upon consideration of plaintiff Donald Bealer's Motion to Reconsider the Court's Order (Doc. No. 52), defendants The Mutual Fire, Marine and Inland Insurance Company; The Franklin Homeowners Assurance Company; FHA Holding Company; Mike Petrelia; and Frank McCall's Memorandum of Law in Opposition thereto, and Bealer's reply thereto, IT IS HEREBY ORDERED that Bealer's Motion to Reconsider the Court's Order is DENIED.

/s William H. Yohn Jr., Judge

_____
William H. Yohn Jr., Judge